IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHERMEKE PERKINS, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-442 |
| | § | |
| PROMOWORKS, L.L.C., | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the court[1] is Defendant's Motion for Summary Judgment (Doc. 53).  The court has considered the motion, all relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED.**

## I.  Case Background

Plaintiff Shermeke Perkins ("Plaintiff") filed this action against her former employer, Promoworks ("Defendant"), claiming discrimination and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981") and the Texas Commission on Human Rights Act ("TCHRA").[2]  Plaintiff also claims that she was subjected to a

---

[1]   This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 60.

[2]   Tex. Lab. Code §§ 21.001 et seq.  Although chapter 21 of the Texas Labor Code is commonly known as the TCHRA, the Texas Supreme Court chose not to refer to the statute by its popular name because the state recently abolished the Commission on Human Rights and transferred its powers and duties to the Civil Rights Division of the Texas Workforce Commission.  <u>Little v. Tex. Dep't of Criminal Justice</u>, 148 S.W.3d 374, 377-78 (Tex. 2004).  Despite the changes (and in order to avoid confusion), the court continues to refer to the act as the TCHRA.

racially hostile work environment and racial harassment.

**A.  <u>Procedural History</u>**

On or about August 4, 2009, Plaintiff filed a charge of discrimination based on race, sex, pregnancy, and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC").[3]   In her charge, Plaintiff stated that: (1) she filed an internal grievance with Defendant alleging retaliation and race and sex discrimination after not receiving a promotion or a bonus; (2) after filing the internal grievance,[4] Plaintiff was required to train white coworkers to perform her duties and responsibilities; and (3) she was terminated with no notice two days after she told a supervisor that she was pregnant.[5]   Based on these occurrences, Plaintiff believed that Defendant discriminated against her due to her race, sex, and pregnancy, and retaliated against her for filing an internal grievance.[6]

On March 31, 2010, the EEOC terminated its processing of the

---

[3]     <u>See</u> Doc. 62-1, Ex. 1 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., EEOC Charge.

[4]     Plaintiff's charge of discrimination indicates the existence of only one internal grievance.  The record shows that Plaintiff filed more than one internal grievance of discrimination or retaliation with Defendant.

[5]     <u>See</u> Doc. 62-1, Ex. 1 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., TWC Charge.

[6]     <u>See</u> <u>id.</u>

charge and issued Plaintiff a right-to-sue letter.[7]  Approximately two months later, Plaintiff requested a right-to-sue letter from the TWC.[8]  After six months, on December 30, 2010, Plaintiff filed the pending action in the 333rd Judicial District of Harris County, Texas.[9]  On February 3, 2011, Defendant removed the case to this court on the basis of diversity and federal question jurisdiction.[10]  Plaintiff filed an amended complaint on July 5, 2011.[11]

Nearly one year later, on June 15, 2012, Defendant filed the pending motion for summary judgment, to which Plaintiff responded on August 10, 2012.[12]

---

[7]    See Doc. 62-1, Ex. 3 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Right-to-Sue Letter.

[8]    See Doc. 62-1, Ex. 3 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Letter Dated June 28, 2010.

[9]    See Doc. 1-2, Ex. B to Notice of Removal, Orig. Compl.

[10]    See Doc. 1, Notice of Removal.

[11]    See Doc. 18, Pl.'s 1st Am. Compl; see also Doc. 19, Def.'s Ans. to Pl.'s 1st Am. Compl.  Although Plaintiff's amended complaint and response to Defendant's motion for summary judgment mention a racially hostile work environment and racial harassment, Plaintiff's discrimination charge makes no mention of a hostile work environment or racially based harassment that could provide any context for the TWC's investigation to encompass such grounds.  See Santi v. Univ. of Tex. Health Science Ctr. at Houston, 312 S.W.3d 800, 805 (Tex. App.-Houston [1[st] Dist.] 2009, no pet.) ("A lawsuit under the [TCHRA] is limited to claims made in the charge or complaint filed with the EEOC or the [TWC] and factually related claims that can reasonably be expected to grow out of the [TWC's] investigation.").  Moreover, not only has Plaintiff failed to allege facts in her pleadings to support a hostile work environment or harassment claim, but such claims are unsupported by the summary judgment evidence.  Thus, to the extent Plaintiff seeks to recover under a theory of hostile work environment or harassment, the court finds that Plaintiff has neither pleaded nor produced competent summary judgment evidence to support these claims.

[12]    See Doc. 53, Def.'s Mot. for Summ. J.; Doc. 54, Def.'s Mot. for Summ. J. Brief; Doc. 62, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J.; see also Doc. 65, Def.'s Reply in Support of Mot. for Summ. J.

B.  **Factual History**

        Defendant is an Illinois-based company engaged in the business
of in-store demonstration and event marketing for clients such as
retail grocery chains, including Safeway.[13]  A core aspect of
Defendant's services for its grocery store clients included
providing "in-store sampling demonstrations events, whereby
[Defendant] would secure the staffing, supplies and scheduling of
food and product sampling."[14]  In November 2004, Star Chambers, a
subsidiary of Defendant, hired Plaintiff as an In-house
Demonstration Coordinator for Randall's and Tom Thumb grocery
stores[15] at a salary of $43,500.[16]  Plaintiff's job responsibilities
involved organizing and managing food sampling events for Randall's
and Tom Thumb stores throughout Texas.[17]  Plaintiff received an
approximately five percent raise during her employment with Star
Chambers.[18]  Plaintiff later became an employee of Defendant as a
result of a merger between Defendant and Star Chambers, and

---

        [13]   See Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of
Frank Colosi, ¶ 3.

        [14]   Id.

        [15]   Randall's and Tom Thumb stores are Safeway-owned grocery chains.

        [16]   See Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo.,
p. 11.

        [17]   See id. at p. 19.

        [18]   See id. at p. 12.

4

acknowledged receipt of Defendant's policy manual.[19]

Sometime in 2005 or 2006, vendors with which Plaintiff had previously worked on behalf of Safeway inquired whether Plaintiff would provide alcohol sampling services in Safeway-owned grocery chains throughout Texas, given a change in the law permitting such sampling.[20]  Seeing the requests and the legalization of alcohol sampling in Texas as "an opportunity to bring that side of the business into Promoworks," Plaintiff approached Defendant's then-president and later Chief Executive Officer (CEO), Michael Kent[21] ("Kent"), Defendant's then-Vice President of Business Development, Joseph Szala ("Szala"), and Cindy McGettigan, and proposed the idea of providing alcohol sampling in stores throughout Texas.[22]  Kent and Szala approved the idea, and Plaintiff began developing an alcohol sampling program for Texas by conducting research and executing alcohol sampling events.[23]  At the time this idea was

---

[19]     See Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of Frank Colosi, ¶ 10; Doc. 54-11, Ex. J to Def.'s Mot. for Summ. J., Employee Acknowledgment Form.

[20]     See Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo., pp. 22-23.

[21]     Id. at p. 22.  Michael Kent was Defendant's president in 2005 and early 2006, and was Defendant's Chief Executive Officer from October 2006 to July 2009.  See Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 2.

[22]     See Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo., p. 23; Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 8; Doc. 54-9, Ex. H to Def.'s Mot. for Summ. J. Brief, Decl. of Joseph Szala, ¶ 6.

[23]     See Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 8; Doc. 54-9, Ex. H to Def.'s Mot. for Summ. J. Brief, Decl. of Joseph Szala, ¶¶ 6-7; Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s

approved, Defendant's business with Safeway in Texas had significantly decreased and Plaintiff's "food demonstration days were less than half that of the other food demo coordinators."[24]

Plaintiff subsequently "began to assume responsibilities as the point-person for alcohol sampling and demonstrations."[25] These responsibilities included duties associated with the position of account manager, such as soliciting sales from vendors and coordinating demonstration events.[26] In October 2006, Defendant offered Plaintiff a title change and a bonus to reflect her new responsibilities with respect to the alcohol sampling program.[27] Around this time, Plaintiff was heading a nationwide project to implement and execute alcohol sampling programs that could be applied to Defendant's Safeway clients nationwide.[28] In implementing this project, Plaintiff conducted research regarding the legalities of alcohol sampling in several states and Canada, and was involved in "every aspect of the business," including the

---

Depo., p. 23.

[24]  Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 8.

[25]  Id. ¶ 9.

[26]  See Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo., p. 29.

[27]  See id. at p. 25.

[28]  See Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 8; Doc. 54-9, Ex. H to Def.'s Mot. for Summ. J. Brief, Decl. of Joseph Szala, ¶ 7.

dress code and the appearance of the program.[29]  Plaintiff was also expected to "shar[e] knowledge with other in-house demonstration coordinators who had alcohol-related questions or events arise from time to time."[30]  At this time, Steve Plunkett ("Plunkett") was employed as an In-House Demonstration Coordinator in Washington.[31]  With the exception of running a test program for alcohol sampling in Washington, Plunkett's duties were primarily in the area of food demonstrations.[32]

In February 2007, Plaintiff received a seven percent salary increase.[33]  About six months later, on August 18, 2007, Plaintiff composed a letter of resignation to Szala, resigning her "position as Randalls/Tom Thumb In-House Coordinator & Safety Alcohol [T]asting Lead," effective August 31, 2007.[34]  As the reason for her resignation, Plaintiff stated that Defendant had failed to keep its verbal promise from late 2006 to raise her base salary, to give her an additional salary increase in April 2007, and to place her on

---

[29]     Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo., p. 25; see Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 9.

[30]     Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 9; see Doc. 54-9, Ex. H to Def.'s Mot. for Summ. J. Brief, Decl. of Joseph Szala, ¶ 8.

[31]     See Doc. 54-10, Ex. I to Def.'s Mot. for Summ. J. Brief, Decl. of Denise Decker, ¶ 20.

[32]     See id.

[33]     See Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo., p. 61.

[34]     Doc. 62-2, Ex. 5 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ J., Frank Colosi's Depo. Ex. 9, Letter of Resignation.

the "incentive bonus plan."[35]   To retain Plaintiff, Defendant extended an offer letter confirming Plaintiff's position as "Safeway Wine & Spirits Lead/In-House Demo Coordinator, Randalls & Tom Thumb," raising her base salary to $57,000 annually, and making Plaintiff eligible to receive a bonus of up to ten percent of her salary.[36]   On August 24, 2007, Plaintiff accepted the position and terms of Defendant's offer, which became effective the same day.[37]

By this time in 2007, approximately eighty-five percent of Plaintiff's position consisted of alcohol responsibilities, whereas the remaining fifteen percent consisted of in-house food demonstration coordinator duties.[38]   Plaintiff's position called for her to report directly to Denise Decker ("Decker"), Director of Retail Business Development.[39]   With respect to her duties as an in-house food demonstration coordinator, Plaintiff was expected to follow instructions from the In-House Demonstration Coordinator Lead, Jennifer Burgess ("Burgess"), who was responsible for

---

[35]   _Id._

[36]   Doc. 54-12, Ex. K to Def.'s Mot. for Summ. J. Brief, Offer Letter Dated Aug. 23, 2007; _see_ Doc. 32-2, Ex. 5 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Frank Colosi's Depo., pp. 104-05.

[37]   _See_ Doc. 54-12, Ex. K to Def.'s Mot. for Summ. J. Brief, Offer Letter Dated Aug. 23, 2007.

[38]   _See_ Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo., pp. 66-67; Doc. 54-9, Ex. H to Def.'s Mot. for Summ. J. Brief, Decl. of Joseph Szala, ¶ 9; Doc. 54-10, Ex. I to Def.'s Mot. for Summ. J. Brief, Decl. of Denise Decker, ¶ 5.

[39]   _See_ Doc. 54-12, Ex. K to Def.'s Mot. for Summ. J. Brief, Offer Letter Dated Aug. 23, 2007; _see also_ Doc. 54-10, Ex. I to Def.'s Mot. for Summ. J. Brief, Decl. of Denise Decker, ¶ 3.

instructing in-house demonstration coordinators and who also
reported to Decker.[40]   After receiving her official job title and
a raise, Plaintiff was given additional responsibilities, such as
"documenting her knowledge about the alcohol sampling rules and
events in reports, spreadsheets or other appropriate format,"[41] and
participating in conference calls with clients other than Safeway.[42]

In March 2008, Defendant promoted Nicole Leigh ("Leigh"), a
Caucasian female employed in Illinois as an account manager for one
of Defendant's clients, to the position of Safeway Account Manager,
which required Leigh to relocate to California.[43]   Defendant did not
post the position of Safeway Account Manager internally, and,
therefore, Plaintiff did not apply for the position.[44]   The Safeway
Account Manager position entailed a promotion to a management
position, a salary increase, and increased responsibilities such as
overseeing the work of the Safeway team located at Safeway's
corporate headquarters and managing Defendant's day-to-day

───────────────

[40]    See Doc. 54-10, Ex. I to Def.'s Mot. for Summ. J. Brief, Decl. of
Denise Decker, ¶ 6; Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of
Frank Colosi, ¶ 13.

[41]    Doc. 54-9, Ex. H to Def.'s Mot. for Summ. J. Brief, Decl. of Joseph
Szala, ¶ 8; Doc. 54-10, Ex. I to Def.'s Mot. for Summ. J. Brief, Decl. of Denise
Decker, ¶ 6.

[42]    See Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo.,
pp. 72-73.

[43]    See Doc. 54-10, Ex. I to Def.'s Mot. for Summ. J. Brief, Decl. of
Denise Decker, ¶ 21.

[44]    See Doc. 62-1, Ex. 5 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ.
J., Frank Colosi Depo., p. 72.

9

relationship with Safeway.[45]

About five months later, in August 2008, Plaintiff complained about race discrimination for the first time in a phone call to Defendant's Vice President of Human Resources (HR), Frank Colosi ("Colosi"), who instructed Plaintiff to submit her complaint in writing.[46]  Plaintiff complied and emailed a written complaint of racial discrimination to Colosi on August 8, 2008.[47]  In her complaint, Plaintiff asserted that she was: (1) "denied earned bonuses and pay increases commensurate with duties and roles performed, which subjected [sic] to unequal pay of terms and conditions of my employment;" (2) "denied opportunities of advancement and promotions with the company where other external employees have been given opportunities with far less experience and lack of knowledge with the Safeway business account;" and (3) "continually asked to mentor, communicate and provide my researched information and expertise" to other employees, managers, and officers of Defendant, leading to the advancement of said others.[48]  Colosi informed Plaintiff that their conversation and her complaint was confidential and did not notify any of Defendant's employees or

---

[45]   See id. at pp. 70-71; Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of Frank Colosi, ¶ 28.

[46]   See Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo., pp. 110-11; Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of Frank Colosi, ¶¶ 22-23.

[47]   See Doc. 54-16, Ex. O to Def.'s Mot. for Summ. J. Brief, Email Compl. Dated Aug. 8, 2008.

[48]   Id.

10

managers about the complaint.[49]

A short time later, Plaintiff supplemented her August 8 complaint, identifying specific conduct that she found to be discriminatory or retaliatory.[50]  Such conduct included a claim that Plaintiff was not reimbursed for time, travel, or cell phone usage undertaken on behalf of Defendant, and that Plaintiff did not receive her annual bonus objectives until after eight months had expired to achieve the objectives.[51]  Colosi began investigating Plaintiff's complaints.[52]

On September 5, 2008, Decker and Burgess completed an annual performance review of Plaintiff, evaluating Plaintiff's managerial skills, among other abilities, therein.[53]  Three days later, on September 8, 2008, Plaintiff emailed a second complaint to Colosi, expressing her concern that the performance evaluation was retaliatory and discriminatory given her prior complaint to Colosi

---

[49]   See Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo., p. 115; Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of Frank Colosi, ¶ 27; Doc. 54-10, Ex. I to Def.'s Mot. for Summ. J. Brief, Decl. of Denise Decker, ¶ 8.

[50]   See Doc. 54-17, Ex. P to Def.'s Mot. for Summ. J. Brief, Suppl. to Pl.'s Aug. 8 Email Compl.

[51]   See id.

[52]   See Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of Frank Colosi, ¶ 26.

[53]   See id.; Doc. 54-10, Ex. I to Def.'s Mot. for Summ. J. Brief, Decl. of Denise Decker, ¶ 8; Doc. 54-18, Ex. Q to Def.'s Mot. for Summ. J. Brief, Performance Eval.

and objecting to the supervisory role of Burgess over her.[54] Colosi determined that the evaluation could not have been retaliatory because he had not informed either Decker or Burgess about Plaintiff's prior complaint or supplement thereto.[55]

One month later, in October 2008, Defendant lost its largest client, Wal-Mart, which constituted about one-third of Defendant's revenues.[56] As a result, Kent, with input from Jon Bos ("Bos") and Szala, devised a recovery plan in November 2008 that called for layoffs of dozens of Defendant's employees nationwide.[57] As of December 1, 2008, Kent and Bos had a list of recent and anticipated layoffs prepared.[58] With respect to Plaintiff's position, Kent and Bos determined that "the Texas-based alcohol program for Safeway would be centralized into Safeway's California operations, where

---

[54]    See Doc. 54-18, Ex. Q to Def.'s Mot. for Summ. J. Brief, Email Exchange Between Pl. and Colosi Dated Sep. 8, 2008; Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of Frank Colosi, ¶ 26.

[55]    See Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of Frank Colosi, ¶ 27.

[56]    See id. ¶ 7; Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 12.

[57]    See Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 13; Doc. 54-7, Ex. F to Def.'s Mot. for Summ. J. Brief, Decl. of Jon Bos, ¶¶ 4-5; Doc. 54-9, Ex. H to Def.'s Mot. for Summ. J. Brief, Decl. of Joseph Szala, ¶ 17.

[58]    See Doc. 54-19, Ex. R to Def.'s Mot. for Summ. J. Brief, Job Elimination Sheet; Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 14; Doc. 54-7, Ex. F to Def.'s Mot. for Summ. J. Brief, Decl. of Jon Bos, ¶ 4.

12

[Defendant] had several existing employees."[59]   Therefore, Kent slated the elimination of Plaintiff's job for January 31, 2009, with Plaintiff's duties to be distributed among existing employees.[60]  Colosi was not consulted or involved in Kent and Bos's decision to eliminate Plaintiff's job.[61]   The elimination of Plaintiff's job was postponed from the January 31 date because Defendant required additional time to consult with Safeway and transition the alcohol sampling business to California.[62]  At the time the decision was made to eliminate Plaintiff's job, neither Kent, Bos, nor Szala were aware of Plaintiff's internal complaints of discrimination or retaliation.[63]

In 2009, Defendant cut all employee bonuses for the year 2008 due to the financial situation resulting from the loss of its biggest client.[64]  In April of the same year, Plaintiff received a

---

[59]     Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 15; see Doc. 54-7, Ex. F to Def.'s Mot. for Summ. J. Brief, Decl. of Jon Bos, ¶ 7.

[60]     See Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶¶ 15-16; see also Doc. 54-19, Ex. R to Def.'s Mot. for Summ. J. Brief, Job Elimination Sheet.

[61]     See Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of Frank Colosi, ¶ 32.

[62]     See Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 19.

[63]     See id. ¶ 18; Doc. 54-7, Ex. F to Def.'s Mot. for Summ. J. Brief, Decl. of Jon Bos, ¶ 7; Doc. 54-9, Ex. H to Def.'s Mot. for Summ. J. Brief, ¶ 19.

[64]     See Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 21.

bonus of approximately $1,308 for her performance in 2008.[65]   On April 17, 2009, Plaintiff emailed Szala, Colosi, Kent, Bos, and Decker, complaining that the bonus she received was discriminatory because it was less than the maximum bonus amount she was eligible for, as stated in her 2007 offer letter.[66]   Colosi investigated Plaintiff's complaint regarding her bonus and calculated that Plaintff was owed an additional $571—which was paid in or around June 2009—for a total bonus of approximately $1,879.[67]   On June 26, 2009, Colosi wrote a memorandum of his investigation of Plaintiff's complaints and noted that he had spoken with Plaintiff regarding his findings three days earlier.[68]

A few weeks later, around July 13, 2009, Plaintiff informed Burgess and other employees that she was pregnant.[69]   Plaintiff did

---

[65]   See Doc. 54-21, Ex. T to Def.'s Mot. for Summ. J. Brief, Email from Colosi Re: Pl.'s Bonus.

[66]   See Doc. 54-20, Ex. S to Def.'s Mot. for Summ. J. Brief, Email Exchange Re: Pl.'s Bonus; see also Doc. 54-12, Ex. K to Def.'s Mot. for Summ. J. Brief, Offer Letter Dated Aug. 23, 2007.

[67]   See Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo., p. 151; Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of Frank Colosi, ¶¶ 36-43; Doc. 54-21, Ex. T to Def.'s Mot. for Summ. J. Brief, Email from Colosi Re: Pl.'s Bonus; see also Doc. 54-22, Ex. U to Def.'s Mot. for Summ. J. Brief, 2007-2009 Bonus Payments to Safeway Team.

[68]   See Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of Frank Colosi, ¶¶ 44-46; Doc. 54-25, Ex. X to Def.'s Mot. for Summ. J. Brief, Mem. Dated June 26, 2009.  Colosi also spoke with Plaintiff about his investigation in February, March, and June 2009.  See Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo., p. 169.

[69]   See Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo., pp. 172-73.

not inform Decker, Szala, Colosi, or Kent that she was pregnant.[70] On July 16, 2009, Szala and Decker, in conjunction with Colosi who participated via telephone, informed Plaintiff that she was being terminated "due to company reorganization resulting in an elimination of her position."[71]   Plaintiff also received a letter explaining the logistics of her termination.[72]   After Plaintiff's termination, Decker learned from Burgess that Plaintiff was pregnant and subsequently informed Szala, who was previously unaware of the pregnancy.[73]

In a letter dated July 24, 2009, Plaintiff complained to Colosi that her termination was the result of pregnancy discrimination.[74]   Colosi responded that the elimination of Plaintiff's position, as well as the consolidation of Plaintiff's duties into Safeway's California operations, was a business decision and that neither he nor any of the individuals involved in eliminating Plaintiff's position were aware of her pregnancy at the

---

[70]   See id. at pp. 173-74.

[71]   Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of Frank Colosi, ¶ 47; see Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo., p. 167; Doc. 54-9, Ex. H to Def.'s Mot. for Summ. J. Brief, Decl. of Joseph Szala, ¶ 21; Doc. 54-10, Ex. I to Def.'s Mot. for Summ. J. Brief, Decl. of Denise Decker, ¶ 15.

[72]   See Doc. 54-26, Ex. Y to Def.'s Mot. for Summ. J. Brief, Termination Letter Dated July 16, 2009.

[73]   See Doc. 54-10, Ex. I to Def.'s Mot. for Summ. J. Brief, Decl. of Denise Decker, ¶ 17; Doc. 54-9, Ex. H to Def.'s Mot. for Summ. J. Brief, Decl. of Joseph Szala, ¶ 23.

[74]   See Doc. 54-8, Ex. G to Def.'s Mot. for Summ. J. Brief, Pl.'s Depo., p. 172. Doc. 54-27, Ex. Z to Def.'s Mot. for Summ. J. Brief, Letter from Pl. Dated July 24, 2009.

15

time.[75]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th

---

[75]    See Doc. 54-28, Ex. AA to Def.'s Mot. for Summ. J. Brief, Letter from Colosi to Pl. Dated Aug. 7, 2009; see also Doc. 54-5, Ex. D to Def.'s Mot. for Summ. J. Brief, Decl. of Frank Colosi, ¶ 48; Doc. 54-6, Ex. E to Def.'s Mot. for Summ. J. Brief, Decl. of Michael Kent, ¶ 23; Doc. 54-7, Ex. F to Def.'s Mot. for Summ. J. Brief, Decl. of Jon Bos, ¶ 7.

Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary

17

judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III.  Analysis

Defendant moves for summary judgment on all of Plaintiff's discrimination and retaliation claims.  Specifically, Defendant contends that: (1) Plaintiff's TCHRA claims prior to February 5, 2009, are time-barred; (2) Plaintiff's Section 1981 claims prior to December 30, 2008, are time-barred; (3) Plaintiff failed to exhaust administrative remedies; (4) Plaintiff cannot establish a prima facie case of discrimination or establish that Defendant's proffered reasons for its actions were a pretext for discrimination under the TCHRA or Section 1981; and (5) Plaintiff cannot establish a prima facie case of retaliation or establish that Defendant's proffered reasons for its actions were a pretext for retaliation under the TCHRA or Section 1981.  The court turns to the merits of Defendant's motion.

### A.  TCHRA Limitations Period

Under the TCHRA, employers are prohibited from discriminating against an employee because of that employee's "race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code § 21.051.  To pursue an actionable claim of discrimination or

retaliation pursuant to the TCHRA, an individual must file a charge of discrimination with the EEOC or TWC within 180 days of the alleged discriminatory act.[76]   Tex. Lab. Code Ann. § 21.202(a); Pegram v. Honeywell, Inc., 361 F.3d 272, 278-79 (5th Cir. 2004). TCHRA claims are exempt from applicable statutes of limitations only where the continuing violation doctrine applies.   Santi v. Univ. of Tex. Health Sci. Ctr. at Houston, 312 S.W.3d 800, 804 (Tex. App.-Houston [1st Dist.] 2009, no pet.).

A continuing violation exists where "an unlawful employment practice manifests over time, rather than as a series of discrete acts."   Id. at 804-05.   In order for the continuing violation theory to apply, "a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action."   Id. at 805. Discrete acts include, but are not limited to, "termination, failure to promote, denial of transfer, or refusal to hire," and constitute separate actionable occurrences that must be pursued within the applicable limitations period.   Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002); see Pegram, 361 F.3d at

---

[76]   Plaintiff argues that an individual must file an EEOC charge within 300 days of the alleged unlawful employment action. See Doc. 62, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., p. 7.   This limitations period, however, applies only to claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, not the TCHRA.   See 42 U.S.C. § 2000e-5(e)(1). Because Plaintiff is not bringing any cause of action under Title VII, the limitations period applicable only to Title VII cases is not relevant to the case at bar.

280.

Here, Plaintiff has identified only discrete acts as the discriminatory employment actions from which her complaint is derived. Specifically, Plaintiff complains that Defendant engaged either in discrimination or retaliation against her by: (1) failing to promote her; (2) failing to pay her all earned compensation or bonuses; (3) requiring her to train non-black coworkers; and (4) terminating her. Plaintiff presents no evidence that any of the aforementioned alleged discriminatory actions were part of an "organized scheme" of discriminatory practices leading to her cause of action. Rather, Plaintiff has identified discrete employment actions amounting to no more than a "series of discrete acts" that cannot be considered as part of Plaintiff's TCHRA discrimination or retaliation claims under the continuing violations doctrine. Santi, 312 S.W.3d at 805; see Morgan, 536 U.S. at 114. To be actionable, the alleged discriminatory acts must have occurred on or after February 9, 2009, 180 days prior to Plaintiff's August 4, 2009 filing with the TWC.

It is apparent from the record that, with the exception of Defendant's alleged failure to pay Plaintiff the bonus to which she was entitled in or around April 2009 and Defendant's decision to terminate Plaintiff's position, the discriminatory or retaliatory employment actions of which Plaintiff complains are outside the applicable limitations period and are thus time-barred.

Accordingly, Plaintiff may proceed under the TCHRA only on the employment decisions or retaliatory conduct that occurred after February 9, 2009, including Defendant's requirement that Plaintiff train white coworkers,[77] Defendant's failure to fully pay Plaintiff earned compensation in 2009, and Defendant's decision to terminate Plaintiff in July 2009.

## B.   Section 1981 Limitations Period

Claims arising under Section 1981 are governed by two separate limitations periods: two years if the right existed prior to December 1, 1990, and four years if the claim was made possible by a post-1990 enactment. See generally Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004) (explaining the application of the federal "catch-all" four-year statute of limitations to Section 1981 claims); 28 U.S.C. § 1658.   In 1991, Congress defined the phrase "make and enforce contracts" to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). This revision to Section 1981 overturned a prior Supreme Court case construing the statute as covering "only conduct at the initial formation of the contract and conduct which impairs the right to

---

[77]   Plaintiff does not indicate precisely when she was required to train non-black coworkers to perform her job duties and responsibilities.  She does, however, state in her TWC charge that this requirement was imposed sometime after May 16, 2008.  See Doc. 62-1, Ex. 1 to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., TWC Charge.  Resolving this evidence in favor of Plaintiff, as the nonmoving party, the court will assume that this action falls within the applicable limitations period.

enforce contract obligations through legal process." <u>Patterson v.</u>
<u>McLean Credit Union</u>, 491 U.S. 164, 179 (1989); <u>see also</u> <u>Jones</u>, 541
U.S. at 383.  The 1991 amendment thus provided plaintiffs with new
causes of action under Section 1981 for discriminatory and
retaliatory employment actions occurring after contract formation.
<u>See</u> <u>Jones</u>, 541 U.S. at 382; <u>Johnson v. Crown Enters., Inc.</u>, 398
F.3d 339 (5th Cir. 2005).

In the present case, Plaintiff has alleged numerous instances
of being subjected to disparate treatment based on race by
Defendant, in violation of Section 1981.  Defendant contends that
Plaintiff's Section 1981 allegations of racially based
discriminatory or retaliatory conduct that occurred prior to
December 30, 2008, are time-barred.  In response, Plaintiff argues
that the four-year statute of limitations applies to her Section
1981 claims.  The court agrees in part.

Specifically, Plaintiff's claims of discriminatory or
retaliatory conduct, including the alleged denial of earned
compensation or bonuses, Defendant's assigning Plaintiff additional
duties and responsibilities, Defendant's requiring Plaintiff to
train non-black employees, Plaintiff's termination, and the myriad
of other racially based slights occurred after the formation of
Plaintiff's relationship with Defendant.  The right to sustain a
Section 1981 cause of action arising from such post-formation
conduct originated when Congress revised the statute in 1991.  <u>See</u>

<u>Jones</u> 541 U.S. at 382-83. Because the aforementioned post-formation acts were not actionable under Section 1981 prior to the amendments, the four-year statute of limitations applies. <u>See</u> <u>id.</u> at 383.

However, to the extent Plaintiff is alleging that Defendant's failure to promote her to the Account Manager position filled by Leigh in March 2008 constituted a violation of Section 1981, the two-year limitations period applies. A promotion claim was actionable under the pre-1991 revisions to Section 1981 if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer," that is, "the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." <u>Patterson</u>, 491 U.S. at 185. If the promotion can be so characterized, then an action for the denial of the promotion was available under Section 1981 prior to the 1991 revisions and is subject to a two-year limitations period. <u>Id.</u>

The 2008 position at issue, that of Account Manager, entailed a promotion to a management position, a salary increase, and increased responsibilities such as overseeing the work of the Safeway team located at Safeway's corporate headquarters and managing Defendant's day-to-day relationship with Safeway. Given the change in Plaintiff's position that would have resulted from receiving the promotion, the court finds that the promotion would

23

have created a "new and distinct relation" between Plaintiff and Defendant, and that the denial of said promotion was actionable prior to the 1991 revisions to Section 1981.  Therefore, the two-year limitations period applies to Plaintiff's failure to promote claim.  Because Plaintiff filed her original complaint on December 30, 2010, the limitations period for this claim elapsed two years previously, on December 30, 2008.  Given that the failure to promote occurred in March 2008, at the latest, the claim falls outside the two-year limitations period and is thus precluded from the court's consideration.

**C.   Discrimination**

Defendant moves for summary judgment on Plaintiff's claim of race discrimination pursuant to the TCHRA and Section 1981, and Plaintiff's claim of sex discrimination pursuant to the TCHRA.

**1.   Applicable Law**

The TCHRA is modeled after federal law with the express purpose of executing the nondiscrimination policies of Title VII. It therefore follows the same framework applied in analyzing claims under Title VII.   Tex. Lab. Code § 21.001(1); Pineda v. United Parcel Serv., Inc., 360 F.3d 483, 487 (5th Cir. 2004). Claims filed pursuant to Section 1981 are also analyzed in accordance with the standards used for Title VII claims.   Walker v. Thompson, 214 F.3d 615, 625 (5th Cir. 2000).  The court therefore considers Plaintiff's claims in light of the analytical framework applied to claims

24

arising under Title VII.  See Shakelford v. Deloitte & Touche, 190 F.3d 398, 404 n. 2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and Title VII is identical.");  Michael v. City of Dallas, 314 S.W.3d 687, 690 (Tex. App-Dallas 2010, no pet.) ("[W]hen we address an issue brought under the TCHRA we may consider federal cases interpreting [Title VII].").

In an employment discrimination case, a plaintiff may prove a claim either through direct or circumstantial evidence.  See Roberson v. Alltel Info. Servs., 373 F.3d 647, 652 (5th Cir. 2004) (addressing race, sex, and age discrimination claims under Title VII).  In the absence of direct evidence, courts analyze Title VII, Section 1981, and TCHRA discrimination claims under the three-stage burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and modified by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), and Rachid v. Jack In The Box, Inc., 376 F.3d 305 (5th Cir. 2004).  See e.g., Burrell v. Dr. Pepper/ Seven Up Bottling Grp., Inc., 482 F.3d 408, (5th Cir. 2007). The parties do not dispute that Plaintiff does not have direct evidence of discrimination.  The court therefore proceeds to consider Plaintiff's claims under the analytical framework of McDonnell Douglas.

Under the "modified McDonnell Douglas approach," a plaintiff may trigger a presumption of discrimination by establishing a prima facie case.  Rachid, 376 F.3d at 312.  Once a plaintiff has

established a prima facie case, the burden shifts to the defendant to proffer legitimate, nondiscriminatory reasons for its actions. Rachid, 376 F.3d at 312; Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).  If the defendant satisfies this burden, then the presumption of discrimination dissolves.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000); Price, 238 F.3d at 720.

The plaintiff must then offer evidence to create an issue of fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative)." Rachid, 376 F.3d at 312 (internal quotation marks omitted); Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir. 2005) (analyzing Title VII claim under the modified approach).  If the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus. Rachid, 376 F.3d at 312.

## 2. Disparate Treatment

A plaintiff may make a prima facie showing of discrimination by demonstrating that she (1) is a member of a protected class, (2) was qualified for the position at issue, (3) was subject to an

adverse employment action, and (4) was treated less favorably because of her membership in that protected class than were other similarly situated employees who are not members of the protected class, under nearly identical circumstances. <u>Lee v. Kan. City S. Ry. Co.</u>, 574 F.3d 253, 259 (5th Cir. 2009). Regarding the third element, only ultimate employment decisions are actionable as adverse employment actions in discrimination cases. <u>See</u> <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 560 (5th Cir. 2007). Ultimate employment decisions include "hiring, granting leave, discharging, promoting, or compensating." <u>Id.</u> at 559. The court notes that the only adverse employment actions complained of within the limitations period are Defendant's failure to pay Plaintiff earned compensation and bonuses and Plaintiff's termination.[78] The court first addresses the former.[79]

Here, Defendant contends that Plaintiff cannot establish a prima facie case of disparate treatment based on race or sex. Specifically Defendant challenges Plaintiff's ability to establish

---

[78]   To the extent Plaintiff is complaining that she was performing job duties of more than one position and should have been paid more, the court notes that receiving more difficult work tasks or an unusually large workload does not constitute an adverse employment action. <u>See</u> <u>Hart v. Life Care Ctr. of Plano</u>, 243 Fed. App'x 816, 818 (5th Cir. 2007); <u>Benningfield v. City of Houston</u>, 157 F.3d 369, 376-77 (5th Cir. 1998); <u>Wesley v. Yellow Transp., Inc.</u>, No. 3:05-CV-2266-D, 2008 WL 5220562, at *2 (N.D. Tex. Dec. 12, 2008) (listing cases) (unpublished). Further, it is not the function of the court to scrutinize the employer's judgment of which positions should receive more or less compensation; the single issue for the court is whether the employer's adverse action was motivated by discrimination. <u>See</u> <u>Deines v. Tex. Dep't of Protective & Regulatory Serv.</u>, 164 F.3d 277, 281 (5th Cir. 1999); <u>Walton v. Bisco Indus., Inc.</u>, 119 F.3d 368, 372 (5th Cir. 1997).

[79]   The court discusses Plaintiff's termination claim below.

the final element of a prima facie case, that she was treated less favorably than a similarly situated comparator who was not a member of her protected class.  In order to satisfy the "similarly situated" comparator prong of a prima facie case, the situations of a plaintiff and her comparator "must be more than similar, they must be 'nearly identical.'"  <u>Collins-Pearcy v. Mediterranean Shipping Co.</u>, 698 F. Supp.2d 730, 760 (S.D. Tex. 2010) (quoting <u>Perez v. Tex. Dept. of Crim. Justice</u>, 395 F.3d 206, 213 (5th Cir. 2004)).  Thus, "employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated." <u>Lee</u>, 574 F.3d at 259-60.

The only comparators identified by Plaintiff in response to Defendant's argument are Leigh and Burgess, both of whom are Caucasian females.  In her deposition, Plaintiff also seems to identify Plunkett ("Plunkett") as a potential comparator.  None of these alleged comparators held the same position as Plaintiff or performed the same duties as Plaintiff.  Burgess was an In-House Demonstration Coordinator Lead responsible for instructing in-house demonstration coordinators, whereas Leigh was employed as an Account Manager in two separate locations and was responsible for overseeing the work of the Safeway team located at Safeway's corporate headquarters and managing Defendant's day-to-day relationship with Safeway.  Plunkett was an In-House Demonstration Coordinator and was largely responsible for coordinating food

28

demonstration events.

Plaintiff, on the other hand, was the only Wine & Spirits Lead/In-House Demonstration Coordinator and approximately eighty-five percent of her job consisted of alcohol-related lead responsibilities, whereas the remaining fifteen percent consisted of in-house food demonstration coordinator duties.  Plaintiff has thus failed to establish the existence of an appropriate comparator for her position or that she was treated less favorably than that comparator.  The court therefore finds that Plaintiff has failed to make a prima facie showing of disparate treatment based on either race or sex.

Moreover, even assuming that Plaintiff had established a prima facie case of disparate treatment based on race or sex, Defendant argues that Plaintiff has failed to produce any evidence that Defendant's proffered legitimate, nondiscriminatory reason for the manner in which it compensated Plaintiff in 2009 was a pretext for discrimination.

Directing the court's attention to declaration testimony and an email exchange between Colosi and Plaintiff, Defendant asserts that Plaintiff was paid the maximum bonus amount that she could have received in 2009, as reduced by Defendant's failing to achieve its annual business goal and by an adjustment by Defendant's Board of Directors to reduce all employee bonuses to 65.5% of the maximum amount to which they were entitled after the reduction from

Defendant's failure to meet its goal.  Defendant also points out that Plaintiff received a greater percentage of her eligible bonus amount than many of Defendant's other employees, whether male or Caucasian.   Defendant  has  thus  articulated  a  legitimate, nondiscriminatory reason for the bonus amount received by Plaintiff in April 2009, thereby rebutting the presumption of discrimination.

Plaintiff has offered no competent summary judgment evidence to rebut Defendant's legitimate, nondiscriminatory reason for its conduct  regarding  Plaintiff's  April  2009  bonus.   Therefore, Plaintiff has failed to bear her burden of establishing pretext by raising a question of fact as to the legitimacy of Defendant's proffered reason.  The court thus **RECOMMENDS** that summary judgment be **GRANTED** in favor of Defendant on Plaintiff's race- and sex-based claims of disparate treatment.

**3.  Termination**[80]

As with general discrimination claims, a plaintiff must show the following in order to establish a prima facie case of discriminatory termination: 1) she is a member of a protected class; 2) she was qualified for the position; 3) she was subject to an adverse employment action; and 4) she was replaced by someone who is not a member of the protected class to which the plaintiff

---

[80]      Although Plaintiff's pleadings and motions are far from clear, it appears that Plaintiff claims that she was terminated because she is black, because she was pregnant, and/or in retaliation for engaging in protected activity.  The court discusses Plaintiff's retaliatory termination claim below.

belongs or was treated less favorably than similarly situated employees of a different class.  See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).

Defendant again challenges Plaintiff's ability to establish the final element of a prima facie case for discriminatory termination, that she was replaced by or treated better than an employee who is not a member of Plaintiff's protected class.  In order to satisfy this element of her prima facie case, Plaintiff must produce competent summary judgment evidence that either a non-black, non-pregnant, or male employee replaced her or that she was treated less favorably than such a similarly situated employee.  For the same reasons discussed above, Plaintiff cannot establish the existence of a similarly situated comparator.

Concerning her replacement, Plaintiff points to Leigh and four unnamed and then-existing employees who assumed Plaintiff's job functions after her termination.  At the time of Plaintiff's termination, Leigh held the position of Safeway Account Manager; Plaintiff has produced no competent summary judgment evidence indicating that Leigh subsequently held Plaintiff's position.  Indeed, the record shows that, although a number of existing employees assumed Plaintiff's job functions among them, no one replaced Plaintiff as Safeway Wine & Spirits Lead/In-House Demo Coordinator.  The court therefore finds that Plaintiff has failed to establish the final element of a prima facie case for

31

Case 4:11-cv-00442   Document 66   Filed in TXSD on 11/26/12   Page 32 of 38

discriminatory termination.

Assuming, arguendo, that Plaintiff had made a prima facie showing of discriminatory termination, Plaintiff has offered no competent summary judgment evidence to rebut Defendant's articulated legitimate, nondiscriminatory reason for Plaintiff's termination. As its legitimate, nondiscriminatory reason for terminating Plaintiff, Defendant claims that it decided to eliminate Plaintiff's position and centralize her job functions into Safeway's California operations as part of a company-wide employee reduction scheme resulting from Defendant's loss of its largest client. Defendant has produced competent summary judgment evidence that as of December 1, 2008, Kent and Bos had a list of recent and anticipated layoffs prepared and that Plaintiff's job was set to be eliminated on January 31, 2009, but was delayed.

Upon Defendant's articulating a legitimate, nondiscriminatory reason for terminating Plaintiff, the burden shifted back to Plaintiff to show that Defendant's proffered reason was a pretext for discrimination. In support of her pretext argument,[81] Plaintiff states that "[t]he record indicates that [Plaintiff's] discharge occurred before the lay-offs were implemented and therefore, had nothing to do with the layoff," and claims that no one else in Plaintiff's division was terminated in 2009. The court finds no

---

[81]   Plaintiff's argument that she was not a poor performer is irrelevant to the issue of pretext because Defendant did not offer poor performance as a basis for terminating Plaintiff.

32

merit to these allegations.  Not only has Plaintiff failed to direct the court to any competent summary judgment evidence supporting these claims,[82] but Defendant's competent summary judgment evidence directly contradicts Plaintiff's assertions by establishing that the company-wide layoffs began in late 2008 and continued into 2011.  In the absence of competent summary judgment evidence to the contrary, Plaintiff cannot raise a question of fact as to Defendant's proffered reason for terminating Plaintiff.

Moreover, with respect to Plaintiff's pregnancy, Defendant has produced competent summary judgment evidence that none of the decisionmakers in Plaintiff's termination were aware of the pregnancy at the time Plaintiff's job was eliminated.  Plaintiff has offered no evidence to rebut Defendant's assertion.  Indeed, Plaintiff's claim that she was terminated arises solely from the presumption that Burgess, whom Plaintiff told about her pregnancy three days prior to her termination, informed Decker about Plaintiff's pregnancy because Decker was Burgess' superior. Plaintiff's unsubstantiated assertions and unsupported speculation are insufficient to constitute competent summary judgment evidence. Brown, 337 F.3d at 541.  Given the evidence before the court, no rational jury could conclude that Plaintiff's pregnancy caused or motivated Defendant's termination decision, especially when the

---

[82]    Merely making the unsubstantiated assertion that no other employees in Plaintiff's department were terminated in 2009, Plaintiff fails to articulate how this allegation establishes pretext.  See Brown, 337 F.3d at 541.

decision was made months prior to the termination and none of the decisionmakers knew that Plaintiff was pregnant.

Accordingly, the court **RECOMMENDS** that summary judgment be **GRANTED** in favor of Defendant on Plaintiff's discriminatory termination claim.

## D.   Retaliation

Defendant moves for summary judgment on Plaintiff's claim of retaliation pursuant to the TCHRA and Section 1981.

The TCHRA prohibits an employer from retaliating or discriminating against an employee who "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding or hearing." Tex. Lab. Code § 21.055. Section 1981 encompasses only race-based retaliation claims against an employer. See generally CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008). The court applies the same McDonnell Douglas burden-shifting framework articulated above to claims of retaliation pursuant to the TCHRA and Section 1981. See Pineda v. United Parcel Serv., Inc., 360 F.3d 483, 487 (5th Cir. 2004); Walker, 214 F.3d at 625.

In order to sustain a retaliation claim under the TCHRA and Section 1981, a plaintiff must first establish a prima facie case of retaliation. Id. Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant, who must

furnish a legitimate, nonretaliatory explanation for the adverse employment action.  <u>Lee</u>, 574 F.3d at 259.  If the employer provides such an explanation, then the inference of retaliation falls away and the burden shifts back to the plaintiff to demonstrate that the explanation is a mere pretext for retaliation.  <u>Id.</u>  A prima facie case of retaliation requires a showing that: (1) plaintiff engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action.  <u>Harvill v. Westward Commc'ns, L.L.C.</u>, 433 F.3d 428, 439 (5th Cir. 2005).

Here, the parties do not dispute that Plaintiff established the first element of her prima facie case, engaging in protected activity, when she filed internal complaints of discrimination and retaliation with Defendant.  With regard to the second element, the occurrence of an adverse employment action, Plaintiff identifies her termination and Burgess and Decker's September 5, 2008 performance evaluation of Plaintiff, in which Plaintiff's managerial skills were evaluated despite Plaintiff's not being a manager, resulting in discipline.[83]  As there is no direct evidence of retaliation in this case, Plaintiff appears to rely on the close timing between her filing internal complaints with Defendant and the occurrence of the aforementioned adverse employment actions.

---

[83]    Plaintiff does not indicate how she was allegedly disciplined. Instead, Plaintiff seems only to claim that the evaluation scores she received for her managerial skills resulted in a lower overall evaluation.

A close timing between protected activity and an adverse employment action may be sufficient to establish a causal connection.  See McCoy v. City of Shreveport, 492, F.3d 551, 561 n. 28 (5th Cir. 2007) (citing Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997)).  However, the burden remains with the plaintiff to establish that the protected activity was the but-for cause of the adverse employment action.  See Richard v. Cingular Wireless LLC, 233 Fed. App'x 334, 337 (5th Cir. 2007).  The court assumes, without deciding, that Plaintiff can establish a prima facie case of retaliation.

As discussed above, Defendant claims to have terminated Plaintiff as part of a company-wide employee reduction scheme that necessitated numerous layoffs as a result of Defendant's losing its largest client.  Regarding Plaintiff's performance evaluation, Defendant testified that the evaluation had no bearing on Plaintiff's eligibility for incentive or merit bonuses.  The proffered business reasons are enough for Defendant to meet its summary judgment burden on Plaintiff's retaliation claim.  Because Defendant has rebutted the presumption of retaliation, the burden shifts to Plaintiff to establish pretext.

The only relevant evidence[84] cited by Plaintiff in support of pretext is the close timing between Plaintiff's engaging in

_____

[84]    As noted above, because Defendant's articulated reason for its employment actions are not based on Plaintiff's poor performance, Plaintiff's argument that she was not a poor performer is irrelevant to this discussion.

protected activity and being subjected to an adverse employment
action. Specifically, Plaintiff filed her first internal complaint
of discrimination with Colosi in August 2008 and, one month later,
she received the aforementioned performance evaluation.
Plaintiff's termination occurred approximately three months after
she filed her April 2009 internal complaint of discrimination with
Colosi.

However, relevant to the issue of causation, Colosi testified
that he had not informed anyone employed by Defendant about
Plaintiff's August 2008 complaint, and supplement thereto, at the
time of Plaintiff's performance evaluation. In addition, Decker
testified that she was unaware of Plaintiff's internal complaints
when she completed Plaintiff's performance evaluation. Defendant
has also produced competent summary judgment evidence in the form
of declaration testimony that none of the individuals involved in
the decision to eliminate Plaintiff's position were aware of
Plaintiff's internal complaints at the time of her termination.
Plaintiff has not produced any competent summary judgment evidence
to rebut Defendant's evidence and show a causal connection between
the alleged employment actions and her filing internal complaints
of discrimination and retaliation. Plaintiff has therefore failed
to raise a fact issue that these employment actions were in
retaliation for her filing internal complaints.

Accordingly, the court **RECOMMENDS** that summary judgment be

**GRANTED** in favor of Defendant on Plaintiff's claim of retaliation.

## V.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 26th day of November, 2012.

Nancy K. Johnson
United States Magistrate Judge

38